Our first case this morning is LAND O LAKES v. Director Kappos. Good morning, Your Honor. May it please the Court. The Patent Office, in this case, took LAND O LAKES' patent rights without reviewing LAND O LAKES' Rule 131 submission to remove the Rhodes patent as prior art. Its decision was arbitrary and capricious because it's not based on substantial evidence. Because, one, it failed to review the entire submission. And, two, it did not consider the evidence that was submitted in the submission at all. Well, I looked at the submission and it had a flow chart. At one point, it just has a processed cheese cooker. That's one of the boxes. Yes, Your Honor. That could be anything. That could be the prior art aqueous method, couldn't it? It could not, Your Honor. If you look at the flow chart, it shows the flow chart that Mr. Groot says is the process for the claimed invention. And if you read it in the context of the patent, it basically speaks in the language of the patent. It says it replaces the conventional cooker stretcher, which the patent also describes, or the traditional cooker stretcher, which is the aqueous version. And also, the patent itself uses, in the paragraph where it describes these types of cookers, where it is not immersed in water as a processed cheese cooker. But where does the declaration point out where in the supposed conception or reduction of practice documents all the limitations of the claim are met? I don't see a correspondence laid out point by point. Your Honor, neither the statute nor the regulations nor the law requires such a point by point claim recitation in the declaration. You have to show you made the invention before the Rhodes reference. And the way you do that is to go through the claimed invention, limitation by limitation, and show where your evidence shows that you made the invention consisting of all the various limitations. Yes, Your Honor. And in that aspect, the Rhodes, the Groot declaration, if you look at paragraph 6, specifically points out that the claimed invention uses the process that's in Exhibit A, which we reproduce in the brief. And if you look at the claimed invention, even the board found that the claimed invention, claim one is a representative of all the claims. And a person skilled in the art looking at the claimed invention and looking at the three-page exhibit would see that it's the same process flow diagram. And looking at the two in concert, it would be clear to one skilled in the art. You're saying it's not your burden to point out this, that, and the other, but to toss all this stuff, 400 pages of exhibits for 120 claims, and say, you, Mr. Exhibit, Mr. Examiner, find out where in all these exhibits the claims are met. No, Your Honor. What I am saying is that the way the declaration has been put together, Mr. Groot did do what he needed to do to establish reduction to practice, because an examiner and someone skilled in the art reading his declaration would know that this is the process that's being used to make the mozzarella cheese. And when you look at the three-page declaration with a claim where most of the steps are a traditional way of making the cheese, and there's one step that Patton makes clear is the additional step of not dunking it in water, basically, when you're cooking the cheese, it would be clear to them that it is a match-up. And neither the NPEP nor the case law specifically requires that the declaration contain a point-by-point where each claim limitation is found in the record that is provided. The Board notes that your declaration, however, is sketchy and conclusory are the words they use, and it's hard to quibble with that characterization. There aren't the details that Judge Lurie is looking for, and I think the law does require. There's no direction from the NPEP or any case law that requires an element-by-element recitation in the declaration. Remember, you are swearing behind something. This is a priority contest. Someone else has an entitlement here, and you're trying to say, no, we were first. Don't you have to be pretty strong in your ability to point that out? I think the record does point that out. Let me answer the question on the conclusory statement. If you look at the Borkowski case, where that language comes from, the conclusory statement language, I think it informs the standard at which that conclusory language has been applied in the past. In Borkowski, Mr. Borkowski puts in a 131 affidavit with some declarations. The examiner looks at both the declaration and the affidavit and finds one of the problems he finds with it is the declarations, the exhibits themselves don't address reduction to practice, but look like something that's a proposal to do something. The Board looks at it next, reviews both the declaration and the exhibits, and when the Board looks at it, they say, with respect to this reduction to practice point, they say there's nothing in the exhibits or that show that there's an appreciation of a reduction to practice. And when they write the sentence... Wouldn't we expect them to be saying, you know, we didn't put it in water, but it still has the characteristics of the prior method, and we stretched it, and it has this much surprising stretchability. Wouldn't we expect to have all that commentary there? And I'll answer that question. Let me just finish on Borkowski, one other thing. So in Borkowski, when the judge finally writes that sentence that says it's a conclusory statement, what he's pointing to is the only evidence in Borkowski for the reduction to practice is not in the exhibits, but just a mere allegation that's in the declaration. So when the two operate together, as the law requires the Patent Office to do, to take the whole thing together, there's nothing there. Here, in contrast in Groot, when Mr. Groot... Where is the information that I say I would expect to find, you know, that there's still the tenacity in the cheese, and it stretches unexpectedly, and so on and so forth, even though it's done in a non-aqueous solution? And that information would be all in the exhibit. So that would be in the exhibit where Mr. Groot says in paragraph six, we're using the alternate mozzarella cheese manufacturing process that's in exhibit A. And then he painstakingly goes through each of the pilot plant trials and what is being tested within the manufacturing process. But that's really a problem, isn't it? That here there are these hundreds of pages, and a busy examiner, and the burden certainly is, as we've mentioned, if you're swearing back of a reference, the burden is to show that everything that's in your claim was done at a certain time in a way sufficient to negate, overcome what's in the reference. It's very strange to me and very hard to understand this prosecution. Even if the examiner was being picky and saying, you didn't show where in these 300 pages you did this or that, would it not have been prudent just to provide some more details? I gather, I don't know, maybe it's not too late to start again and refile, but I think that it's pretty clear that the burden of overcoming that reference was not met by the presentation. And, Your Honor, to the extent after the examiner made that comment, Land O'Lakes' counsel did try to put in exactly that kind of a point-by-point claim chart and provide it as Exhibit Q, and the examiner refused to accept it, saying it should have been done in the first instance. Well, maybe that's right. Maybe you had to start again at that stage. At this point in the prosecution, this is the exhibit that was entered into evidence by the Office of Patent and Legal Administration. And it is one that, under the law as it is in Borkowski and Oshinsky, the examiner should have considered as a whole. And if you read it in concert, and it's not that it has to all be in the declaration. If you read the declaration in concert with the exhibit, you can see that the two do match up. Probably you can do it. Probably on appeal we can do it. But here we have a straightforward examination. Let's assume that, in fact, the work had been done at the time when you say it must have been done. It really doesn't tie it together point-by-point as far as I can tell. And it doesn't go element-by-element, but there's no requirement that it go element-by-element. It needs to get behind what's in the reference. If the reference shows that it's melted or treated or stretched without water, then that's what you need to show. And to the extent that it needs to get behind the date of the reference, the declaration clearly does that. Because Mr. Garut does point out that the claimed invention was reduced to practice before the effective date of the Rhodes reference. Based on information and belief. Based upon, very clearly based upon his review of the documents that he authenticates are the inventor's documents and people that worked at the direction of the inventor, which is paragraph three. Based upon his review of those documents, his working relationship with Mr. Wigand, one of the inventors for five years, so he recognizes his handwriting. And based upon then him marching through and kind of mapping those documents through his declaration by first pointing out in Exhibit A, here's the process that someone skilled in the art, the examiner in particular, would be able to understand just by flipping through it, especially after he spent seven years with this application. And then another, what, 11 or 12 exhibits that march through showing the work done by the inventor at his direction to show repeatedly different attempts to, and successfully reducing to practice that same process. And you get that both from a combination of the declaration with the exhibit. And the rule under any case that has been both decided by this court and the board is the examiner has that burden. He has to look at both parts. He can't just look at the declaration by itself. He must look at both the declaration and the exhibit and read them together. And it's just for this reason.  Is your impression that the examiner didn't look at all at the second affidavit, at the second filing? Yes, he made it very clear he was not... Challenging that in the District of Minnesota under the Administrative Procedures Act, right? No, not the exhibit 181, yes. We are challenging the examiner's refusal in the District of Minnesota for both his refusal under the 181 and the 182 petition. But the examiner has decided he is not going to look at this evidence even after we gave him the point-by-point. He could have very easily accepted the point-by-point and taken a look at it to see if we are right that we did reduce to practice before the Rhodes patent. But he did not agree to do that. But on this record...  Yes, thank you. Okay. We'll hear from Ms. Pettigrew. Good morning. May it please the Court. This appeal involves a single straightforward issue, whether the Garut Declaration was sufficient to show that the inventors reduced the claimed invention to practice before the effective date of Rhodes. What's your view of that second affidavit? Let's assume that it cured the flaws in the first one. Isn't it rather harsh to refuse to review it? By the second declaration, you mean the one that included exhibit Q that was not entered into the record in this case? Yes. First of all, that issue is not on appeal here. The examiner's... I'm not discussing whether it's on appeal. This is the practice of the office. Let's just say that the first affidavit was too burdensome and too cumbersome to the examiner, and so the applicant tries to remedy it, and the examiner says, no, not on my watch. You live with your mistake. The examiner's decision to not enter the second declaration into the record, this came after prosecution had already been closed a second time, again after... I'll back up for a minute. Well, we'll just put it backwards. You're saying that the examiner said, I'm going to close prosecution and not look at anything else. This was after... Isn't the purpose, isn't the office supposed to assist the applicants in proceeding through the office? The office had already given the applicant an extraordinary opportunity by this point to have the Garut Declaration entered into the record. Seven years after Land O'Lakes was first aware that Rhodes was being cited against it and after the original inter-parties re-exam had already made it to the board, the case was pending on appeal before the board, at which point Land O'Lakes said, aha, we've discovered we have this evidence of reduction to practice so that we can swear behind the reference. At that point, they had to file a petition to have this first Garut Declaration entered into the record because the case was already on appeal before the board. They were granted that relief to have this declaration entered into the record and the burden was on them to provide a declaration that was sufficient to swear behind the reference. So they filed 300 pages and the examiner says, that's ridiculous, you aren't helping me. So they try and remedy it and the examiner says, you can't fix it. Isn't that, we've been perhaps scolding the applicant, but there seems to be the relationships here. So here we are, two separate legal actions going, appeal here and they still haven't had their evidence considered. That's true, Your Honor, but at that point when they tried to have the second declaration entered into the record, under the rules for inter partes re-exam, at that point the standard for admitting it would have been whether Land O'Lakes had shown good and sufficient reasons why it was necessary and why the evidence was not presented earlier. And the examiner determined that they had not given good reasons for why they had not presented a more detailed explanation when they presented the first declaration. Relevant to Judge Newman's earlier question, is there a duty to assist in the Patent Office, analogous to in the Veterans Administration? It is, you're right in that it's not, it's similar in that it's not quite always an adversarial process. That's the question, I didn't say there was or wasn't. Well, I think at this point the office had given Land O'Lakes more than sufficient assistance to allow them to try to swear behind this reference. It's an administrative agency, it's not a tribunal that now or never. I think it's very strange that the examiner responded so rigorously and refused to accept the attempt to remedy what the examiner had complained about. I believe, well, Land O'Lakes has been able to challenge the examiner's decision not to enter the second declaration into the record. That wasn't my question, whether they're challenging it elsewhere. My question is this entire relationship of prosecution, what brought them here on appeal is because the office keeps saying, no, we're not going to look at your evidence, and actually I gather is defending quite rigorously the right not to look at the evidence. Your Honor, the office's position is that the appellant was given ample opportunity to present evidence to show a reduction. Actually, they made a mistake in not going through the detail that the examiner preferred. That's fatal in this relationship, apparently. I'm sorry, the question is... They made a fatal mistake. They submitted 300 pages, they tried to fix it, and they were denied the opportunity. They did make a mistake by not meeting their burden of providing adequate evidence. But the examiner said they made a mistake, so they tried to fix it. Not allowed to do that? This was an inter-parties re-exam. At that point, the re-examination had been pending for seven or eight years. This was actually the third ever inter-parties re-exam ever filed, which you can tell by the number, 9500003. It's now the longest pending inter-parties re-exam ever before the office. The office is supposed to conduct inter-parties re-exam and ex-party re-examination proceedings with special dispatch. It was already seven or eight years before we even got into this situation. So if you're saying it was special dispatch, now how many years have we spent on this appeal? This appeal to this court has been less than a year at this point. The appeal number last year. Again, I think I know the question of whether the second declaration... It may or may not have cured the flaw, but the examiner just refused it, I gather. He says, no, too late. The examiner said that they had not presented good and sufficient reasons for why they hadn't presented that evidence earlier. Was the person who prosecuted this application doing it pro se, or was it someone who was registered to practice in the patent office and presumed to know the rules? Yes, you're correct, Judge Lurie. The second is correct. There was a competent patent practitioner. Or at least qualified. Qualified, right. A qualified patent practitioner. Ms. Pettigrew, these flow charts carry the title Alternate Mozzarella Cheese Manufacturer. Why wouldn't one of skill in the art be able to divine from these charts that it is in fact practicing an alternate manufacture procedure? Well, I think that's exactly the point, Chief Judge Rader, that it does appear to be some sort of alternate procedure, but it's not at all clear from the face of Exhibit A that this is the particular alternate method that Land O'Lakes is claiming in its patents. In particular, heating occurred without aqueous immersion. It's not at all clear from the face of this exhibit or any of the other exhibits that that's what was reduced to practice. I hope I answered your question. So, as we said, as I started out saying, the only issue before this court right now is whether the Garut Declaration was sufficient. Land O'Lakes has not met its burden to show a reduction to practice of the claimed invention prior to the effective date of Rhodes. As was discussed, the declaration only includes conclusory statements, and the burden is not on the examiner to provide a detailed analysis of the hundreds of pages of exhibits absent some initial explanation from the patentee as to what is included in the exhibits and where exactly they show a reduction to practice. Does the panel, if there are no further questions, we ask that you affirm the board's decision. Thank you. Mr. Bob Monahan. Your Honor, in this record that the examiner created, he never once said he couldn't find the element. He never bothered to look at it. And your law requires that he look at the whole thing. And he didn't create any record on which you can find even one sentence where they suggest that he looked at the whole record. And that's the rule that's in Borkowski. That's the rule that's in Oshinsky. There is not a case that they can cite or I can find that suggests that the examiner can just look at a portion of the record. In fact, in Oshinsky, the board even went back and instructed the examiner. The examiner said the conclusory statements offered throughout the declaration, that seems to indicate that he consulted the declaration and went throughout the declaration, doesn't it? But he doesn't have a single word in there. When you say the declaration, I view that as he just looked at the four-page document that is the declaration. There's nothing in there that suggests that he even looked at the exhibit. And in fact, at the end when he concludes, if he concludes it's a defective declaration and cannot be used to swear behind, there's nothing in the entire record. He goes on to say they failed to provide any fact or analysis of either the claimed invention or the exhibits upon which the conclusion rests. It looks to me like he consulted it, didn't he? I don't think that sentence suggests that he considered the exhibit. What he did was he took the third-party requester's view that basically the statements were conclusory. And under Borkowski, I don't think that our declaration, I think, is not a conclusory declaration. It goes well beyond the fact of Borkowski where that language came from. And I do think that in this record, there's just nothing to show that the office or the board looked at the entire record before making this decision. And for that reason, we ask that you vacate their decision and send this back so that the Patent Office can finally consider our evidence. All right. Thank you. The court will take a brief recess.